## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

ANTHONY JAMES BRAXTON,

                    Plaintiff,

v.                                                    CIVIL ACTION NO.   2:18-cv-00585

DETECTIVE C.A. YOUNG, et al.,

                    Defendants.

### PROPOSED FINDINGS & RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).   Before this Court are the motions to dismiss filed by Defendants Fayette County Commission ("Fayette County") and Fayette County Sheriff Mike Fridley ("Fridley") (ECF No. 13), Larry E. Harrah ("Harrah") and Brian D. Parsons ("Parsons") (ECF No. 15), W.R. Callison ("Callison") (ECF No. 17), and C.A. Young ("Young") (ECF No. 19) (collectively, "Defendants").

For the reasons explained more fully herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Fayette County's and Fridley's motion to dismiss (ECF No. 13), **GRANT IN PART** and **DENY IN PART** Harrah's and Parsons's motion to dismiss (ECF No. 15), **GRANT IN PART** and **DENY IN PART** Callison's motion to dismiss (ECF No. 17), and **GRANT** Young's motion to dismiss (ECF No. 19). It is further **RECOMMENDED** that the presiding District Judge **DISMISS** Plaintiff's complaint (ECF No. 2) as to Defendants Central West Virginia Drug Task Force

Corporation; Oak Hill City Police Department; Fayetteville City Police Department; City of Oak Hill, West Virginia; City of Fayetteville, West Virginia; Mount Hope City Police Department; City of Mount Hope; Ansted City Police Department; City of Ansted; Gauley Bridge City Police Department; City of Gauley Bridge; Nicholas County Commission; Nicholas County Sheriff Department; Summersville City Police Department; City of Summersville, West Virginia; Richwood City Police Department; City of Richwood; Clay County Commission; Clay County Sheriff Department; Webster County Commission; Webster County Sheriff Department; City of Webster Spring, West Virginia; Webster Spring City Police Department; City of Cowen, West Virginia; Pocahontas County Commission; Pocahontas County Sheriff Department; Marlinton City Police Department; City of Marlinton, West Virginia; and the estate of Steve Kessler.

*I.    BACKGROUND*

Plaintiff Anthony James Braxton ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 and the West Virginia Constitution, alleging that his constitutional rights were violated when the police seized over $5,000 in cash from his home in Fayette County, West Virginia, and failed to return it to him.   (ECF No. 2.)   Plaintiff claims that on April 18, 2016, Young submitted an affidavit in support of a search warrant for Plaintiff's residence that falsely accused Plaintiff "of being a drug dealer."   (*Id.* at 1; *see* ECF No. 2-3 at 6–7.)   The affidavit stated that a confidential informant used marked money to purchase heroin from an "older white male subject" who instructed the informant to drive him from a trailer park to Plaintiff's residence, where he met with another male subject.   (ECF No. 2-3 at 7.)   The affidavit further stated that the older white male subject gave the informant heroin on the drive back to the trailer park.   (*Id.*)

The search warrant was signed by a Fayette County magistrate and executed that same day.   (ECF No. 2-3 at 1.)

Plaintiff claims that Young seized $4,400 and "a very small amount of weed" from him when executing the search warrant, but the property receipt Plaintiff received "stated $2,200 cash and some weed[,] nothing else."   (ECF No. 2 at 1.)   According to Plaintiff, when he told Young he had $4,400 in cash, not $2,200, Young responded that $2,200 was "all the money that the other police [gave] him."   (*Id.*)   However, Plaintiff alleges that Young later deposited $4,402 into a "Police Forfeiture Bank Account."   (*Id.* at 6–7.) Plaintiff further alleges that Young told him that "if [Plaintiff] wanted [his] money back . . . [he] would have to find [Young] a big time heroin dealer."   (*Id.* at 1.)

Plaintiff avers that by July 25, 2016, no civil forfeiture proceedings had been instituted against him, so he asked then-Fayette County Sheriff Steve Kessler ("Kessler") for his money back.   (*Id.* at 2.)   Plaintiff also alleges that he informed Kessler that "all [his] money was not accounted for on [the] property receipt."   (*Id.*)   According to Plaintiff, Kessler stated that Plaintiff "was not getting [his] money back, because it's been forfeited" and made a comment that "he didn't like JAP'S [sic] . . . AND that THEY should NOT BE IN THIS COUNTRY."   (*Id.* (emphasis in original).)   Plaintiff, who alleges that he is Korean, interpreted Kessler's comment as racist.   (*Id.*)   Plaintiff claims that he requested his money from Kessler on two other occasions, on November 14, 2016, and January 16, 2017, and told Kessler that he would sue if the money was not returned.   (*Id.*) Kessler refused to return Plaintiff's money, and Plaintiff alleges that Kessler told him the money had been spent to "get [Kessler] elected."   (*Id.* at 2, 9.)   Plaintiff further alleges that Parsons, Harrah, and the magistrate who signed the search warrant also used Plaintiff's money to support their re-election campaigns.   (*Id.* at 6.)

On February 15, 2017, Callison submitted an affidavit in support of a second search warrant that accused Plaintiff of unlawful delivery of a controlled substance.   (*Id.* at 2; *see* ECF No. 2-4.)   The warrant was signed by the same magistrate who signed the April 18, 2016 search warrant, and it was executed on the date it was signed.   (ECF No. 2 at 2; ECF No. 2-4.)   Plaintiff claims that the police came to his home to kill him "to do damage control" because they did not want to return the money seized on April 18, 2016.   (ECF No. 2 at 2–3.)   According to Plaintiff, the police took $650 while executing the February 15, 2017 search warrant but did not give him a property receipt for it, although they gave him "a ticket for weed."   (*Id.* at 2.)   He alleges that the $650 was deposited in a forfeiture bank account the following day and "spent . . . short [sic] time later."   (*Id.* at 2–3.)

Plaintiff avers that on June 19, 2017, he contacted Young to ask about the money seized pursuant to the April 18, 2016 search warrant.   (*Id.* at 3.)   According to Plaintiff, Young told him that the money was "given . . . to the U.S. Attorney [sic] Office in Charleston."   (*Id.*)   Plaintiff then filed a civil action in the Circuit Court of Fayette County, West Virginia, on July 24, 2017, seeking to have the funds seized on April 18, 2016, returned to him.   (*Id.*; *see* ECF No. 2-8 at 1.)   He alleges that on August 14, 2017, a secretary at the Fayette County Prosecutor's Office informed him that he would receive a check for $2,100 if he signed a settlement agreement.   (ECF No. 2 at 3; *see* ECF No. 2-5.)   However, Plaintiff refused to sign the agreement because he believed he would incriminate himself.   (ECF No. 2 at 4.)   On September 13, 2017, the Circuit Court of Fayette County, West Virginia, ordered that $2,102—the amount of cash listed on the April 18, 2016 property receipt, less $100 in marked currency—be returned to Plaintiff by check.   (ECF No. 2-8.)   Plaintiff alleges that he received the check on September 19,

2017, but he complains that he did not receive the actual cash that was seized from his home.   (ECF No. 2 at 6.)

Plaintiff brought this action on April 17, 2018.   (ECF No. 2.)   Defendants filed their motions to dismiss on June 12, 2019.   (ECF Nos. 13, 15, 17, 19.)   Plaintiff filed timely responses on July 17, 2019.   (ECF Nos. 23–27.)   Defendants filed timely replies on August 2, 2019.   (ECF Nos. 28–31.)   As such, the motions to dismiss are fully briefed and ready for adjudication.

## II.    LEGAL STANDARDS

### A.  *Rule 12(b)(6) Motion to Dismiss*

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).   However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face."   *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'"   *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).   A complaint that alleges enough facts "to satisfy the elements of a cause of action created by

[the relevant] statute" will survive a motion to dismiss.  *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief."  *Id.*   Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense."  *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged."  *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

B.  *28 U.S.C. § 1915 Screening*

Where, as here, a plaintiff seeks to proceed *in forma pauperis*, this Court has a duty to "screen initial filings . . . to independently assess the merits of *in forma pauperis* complaints" and "exclude suits that have no arguable basis in law or fact."  *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)); *see* 28 U.S.C. § 1915(e).   This Court must "dismiss a complaint filed *in forma pauperis* 'at any time if [it] determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)).   When reviewing an *in forma pauperis* complaint for failure to state a claim, this Court applies the same standards that it applies to review a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6).

*Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citing *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003)).

### III.   ANALYSIS

The undersigned construes Plaintiff's convoluted narrative complaint to set forth the following claims against the remaining defendants[1]: a federal constitutional challenge to the West Virginia Contraband Forfeiture Act, W. Va. Code § 60A-7-701, *et seq.*, conspiracy claims against Harrah, Parsons, Callison, and Young, and other federal and state constitutional violations against Harrah, Parsons, Callison, Young, and Kessler.

#### A. *Sufficiency of Conspiracy Allegations*

Defendants argue that Plaintiff has not sufficiently alleged a 42 U.S.C. § 1985(3) conspiracy to commit civil rights violations.   (ECF No. 14 at 8–9; ECF No. 16 at 7–9; ECF No. 18 at 10–11; ECF No. 20 at 7–8.)   To state a claim under § 1985(3),[2] a plaintiff must plead "concrete supporting facts" to demonstrate, among other elements, "an agreement or a meeting of the minds by [the] defendants to violate the [plaintiff's] constitutional rights."   *Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995)).   Stated another way, the allegations "must, at least, reasonably lead to the inference that the defendants positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Patterson v. Yeager*, No. 2:12-cv-01964, 2016 WL 589881, at *18 (S.D.W. Va. Feb. 11, 2016).   Merely stating that the defendants engaged in a conspiracy or were part of a

---

1 On May 1, 2019, the undersigned filed a Proposed Findings and Recommendation recommending that the presiding District Judge dismiss Plaintiff's claims against Magistrate Leonard Bickford and the West Virginia State Police pursuant to 28 U.S.C. § 1915(e)(2)(B).   (ECF No. 7.)   That Proposed Findings and Recommendation remains pending before the presiding District Judge.
2  The undersigned notes that neither § 1985(1), which governs conspiracies to prevent a federal officer from performing his or her duties, nor § 1985(2), which governs conspiracies to interfere with court proceedings, applies to the facts alleged in the complaint. (*See* ECF No. 2.)

7

conspiracy is insufficient. *Soc'y Without a Name*, 655 F.3d at 347. Additionally, the plaintiff must allege that the defendants formed the conspiracy because they were "motivated by a specific class-based, invidiously discriminatory animus." *Id.* at 346 (quoting *Simmons*, 47 F.3d at 1376). In other words, the conspiracy must be formed because the defendants share "a group animus" against the class to which the plaintiff alleges he or she belongs. *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979).

Here, Plaintiff alleges that Harrah and Parsons "advis[ed]" the police about how to seize Plaintiff's money and "cover [their actions] up" so that Harrah and Parsons could spend the money on Harrah's re-election campaign. (ECF No. 2 at 4, 6–7.) He further alleges that Harrah, Parsons, and the police utilized the West Virginia Contraband Forfeiture Act to "rob[]" people of color like himself. (*Id.* at 9.) And he claims that Callison and the magistrate who authorized the search warrant were motivated by racial prejudice in allowing Plaintiff's home to be searched and his money seized. (*See id.* at 2–3.) The undersigned **FINDS** that these allegations, although sparsely included throughout Plaintiff's rambling narrative complaint,[3] are sufficient to allege a § 1985(3) conspiracy at the motion-to-dismiss stage: Plaintiff alleges facts to show who the members of the conspiracy were, the existence and nature of their agreement, their motivations, and their acts in furtherance of the conspiracy. *See Soc'y Without a Name*, 655 F.3d at 346 (quoting *Simmons*, 47 F.3d at 1376) (listing elements of § 1985(3) conspiracy); *Ali v. Raleigh Cty.*, No. 5:17-cv-03386, 2018 WL 1586493, at *10 (S.D.W. Va.

---

3 This Court is required "to liberally construe a pro se complaint." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 72 (4th Cir. 2016) (citing *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015)). This is "particularly appropriate where, as here, there is a pro se complaint raising civil rights issues." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (quoting *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009)).

Mar. 29, 2018) (concluding that plaintiff adequately pled § 1985(3) conspiracy where he alleged that defendants "got together to falsely create the probable cause necessary to arrest the Plaintiff" as a result of "discriminatory animus relating to the Plaintiff's race and his intent to sue Defendant Tanner and Raleigh County in a discrimination lawsuit"). Therefore, the undersigned proposes that the presiding District Judge **DENY** the motions to dismiss filed by Harrah and Parsons (ECF No. 15) and Callison (ECF No. 17) with respect to this claim.

Further, to the extent Plaintiff's conspiracy claim could instead be brought pursuant to 42 U.S.C. § 1983, the undersigned **FINDS** that it is likewise sufficiently pled. To establish such a claim, a plaintiff must plead "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right [of the plaintiff]." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). As previously explained, Plaintiff alleges that Harrah and Parsons instructed the police about the use of the West Virginia Contraband Forfeiture Act to seize money from Plaintiff and conceal their actions so that they could use the money to contribute to their political campaigns. (ECF No. 2 at 4, 6–7, 9.) As such, the undersigned proposes that the presiding District Judge **DENY** the motions to dismiss filed by Harrah and Parsons (ECF No. 15) and Callison (ECF No. 17) with respect to any § 1983 conspiracy claim.

B. *Plaintiff's Standing to Challenge West Virginia Contraband Forfeiture Act*

Defendants also argue that Plaintiff cannot challenge the constitutionality of the West Virginia Contraband Forfeiture Act, W. Va. Code § 60A-7-701, *et seq.*, because "no forfeiture action was ever filed against him under that statute." (ECF No. 14 at 9–11; ECF No. 16 at 9–11; ECF No. 18 at 11–13.) In general, to satisfy "the 'irreducible constitutional

9

minimum' of standing," a plaintiff "must clearly . . . allege facts demonstrating" that he suffered an injury in fact that is fairly traceable to the defendant's conduct and is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). To that end, "[a] party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." *MacDonald v. Moose*, 710 F.3d 154, 162 (4th Cir. 2013) (quoting *Cty. Court of Ulster Cty. v. Allen*, 442 U.S. 140, 154–55 (1979)). And when, as here, the plaintiff seeks a declaratory judgment, the complaint's allegations must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Steadfast Ins. Co. v. Berkley Nat'l Ins. Co.*, 217 F. Supp. 3d 904, 911 (S.D.W. Va. 2016) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The undersigned **FINDS** that the complaint's allegations demonstrate that Plaintiff has standing to pursue his claim to declare the West Virginia Contraband Forfeiture Act unconstitutional. Defendants accurately point out that Plaintiff alleges that no forfeiture proceedings under West Virginia Code § 60A-7-705 were ever brought against him. (ECF No. 14 at 10–11; ECF No. 16 at 10; ECF No. 18 at 12–13; *see* ECF No. 2 at 2, 5.) However, § 60A-7-704(b) authorizes the seizure of property prior to the institution of proceedings under § 60A-7-705 if, among other circumstances, the seizure is made "pursuant to a search under a search warrant." W. Va. Code § 60A-7-704(b)(1). The statute requires that "forfeiture proceedings . . . be instituted within ninety days of the seizure" in such a case. *Id.* § 60A-7-704(c). Plaintiff alleges that the police seized $4,400 from him pursuant to the April 18, 2016 search warrant and $650 pursuant to the

February 15, 2017 search warrant.   (ECF No. 2 at 1–2.)   He avers that he received a property receipt for $2,200 on April 18, 2016, but did not receive a property receipt at all on February 15, 2017.   (*Id.*)   Plaintiff further alleges that the ninety-day deadline passed without any proceedings being instituted in either instance.   (*Id.*)   Still, Plaintiff claims, his money was not returned to him until he filed a petition for its return on July 24, 2017, and after that he received a check for only $2,102.   (*Id.* at 3, 5–6.)

Therefore, accepting Plaintiff's allegations as true—which this Court must do when ruling on a motion to dismiss, *McCaffrey v. Chapman*, 921 F.3d 159, 163–64 (4th Cir. 2019) ("In considering a motion to dismiss under Rule 12(b)(6), a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." (internal quotation marks omitted))—Defendants seized Plaintiff's money pursuant to § 60A-7-704(b)(1) and did not institute forfeiture proceedings under § 60A-7-705 within ninety days as required by § 60A-7-704(d), yet they continue to retain Plaintiff's money. (*See* ECF No. 2 at 1–3, 5–6.)   These facts satisfy all three constitutional standing requirements: surely Plaintiff has been injured by Defendants' seizure of his property and would be remedied by a court order that Defendants return it.   *See Spokeo, Inc.*, 136 S. Ct. 1540, 1547 (2016) (listing constitutional standing requirements).   As such, the undersigned proposes that the presiding District Judge **DENY** with respect to this claim the motions to dismiss filed by Harrah and Parsons (ECF No. 15) and Callison (ECF No. 17).

### C. *Fayette County's and Fridley's Motion to Dismiss (ECF No. 13)*

Fayette County and Fridley assert that Plaintiff's claims against them should be dismissed because Plaintiff has not alleged or demonstrated that a policy or custom led to the alleged deprivation of his constitutional rights.   (ECF No. 14 at 5–8.)   To hold a local

government entity—or an official of such an entity sued in his official capacity[4]—"liable for a constitutional violation . . . the plaintiff must show that the execution of a policy or custom of the [local government entity] caused the violation."  *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 653 (4th Cir. 2017) (quoting *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004)).  The local government entity "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable . . . on a *respondeat superior* theory."  *Hunter v. Town of Mocksville*, 897 F.3d 538, 553–54 (4th Cir. 2018) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  Put another way, "liability will only lie where it is affirmatively shown that the official [or entity] charged acted personally in the deprivation of the plaintiff['s] rights."  *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

Here, Plaintiff's claims against Fayette County and Fridley are based on vicarious liability.  In naming them as defendants, Plaintiff explains that they are "(Liable) [sic] for not monitoring their Police Officers" and for not preventing them from "coming into [Plaintiff's] Dwelling on April 18, 2016, and on February 15, 2017."  (ECF No. 2 at 12.) Plaintiff does not even allege generally that Fayette County instituted any policy or custom that led to the claimed deprivation of his constitutional rights, nor does he allege that

---

4 Despite Plaintiff's assertion that he sues Fridley "in his Personal and Job Capacity" (ECF No. 2 at 12), Plaintiff brings this action against Fridley only in his official capacity as the sheriff of Fayette County, West Virginia.  "[T]he mere incantation of the term 'individual capacity' is not enough to transform an official capacity action into an individual capacity action."  *Adams v. Ferguson*, 884 F.3d 219, 225 (4th Cir. 2018). The complaint's allegations relate only to the former sheriff, and there is no mention of any action taken by Fridley personally.  (ECF No. 2.)  When the local governmental entity the defendant represents is alleged to be "a moving force behind the deprivation" of the plaintiff's constitutional rights, but the defendant himself is not alleged to have "caused the deprivation," the suit is better characterized as an official-capacity suit.  *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).  That is the case here.  And an action against a local government official in his official capacity "represent[s] only another way of pleading an action against [the] entity of which [the] officer is an agent." *Adams*, 884 F.3d at 225 (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).

Fridley was personally involved in the events detailed in the complaint or otherwise directed them so as to render him the source of any such policy or custom.   In fact, he alleges no facts about them at all.   He merely seeks to attribute to them, in a conclusory manner, the actions of their co-defendants, which is an insufficient basis for a claim against them.   *Hunter*, 897 F.3d at 553–54 (quoting *Monell*, 436 U.S. at 690).   As such, the undersigned **FINDS** that Plaintiff's complaint fails to allege claims against Fayette County and Fridley.   The undersigned proposes that the presiding District Judge **GRANT** Fayette County's and Fridley's motion to dismiss the claims against them (ECF No. 13).

### D. *Harrah's and Parsons's Motion to Dismiss (ECF No. 15)*

Harrah and Parsons contend that absolute prosecutorial immunity bars Plaintiff's claims against them.   (ECF No. 16 at 4–7.)   Absolute prosecutorial immunity "extends . . . to [prosecutorial] actions 'intimately associated with the judicial phase of the criminal process.'"   *Nero v. Mosby*, 890 F.3d 106, 117 (4th Cir. 2018) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)).   Whether the defendant's alleged conduct falls within the scope of absolute prosecutorial immunity depends on "the nature of the function performed, without regard to the identity of the actor who performed it, the harm that the conduct may have caused, or even the question whether it was lawful."   *Id.* at 118 (internal quotation marks omitted).   When the defendant "act[s] as 'an officer of the court'" or as an advocate, he is entitled to absolute prosecutorial immunity, but it does not extend to his performance of "investigative or administrative tasks."   *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009); *Nero*, 890 F.3d at 118.   In making this determination, this Court "look[s] at the specific act challenged."   *Nero*, 890 F.3d at 120.

Harrah and Parsons assert that they are absolutely immune from suit because "Plaintiff's claims . . . are premised upon their participation in an alleged civil forfeiture proceeding." (ECF No. 30 at 1; ECF No. 16 at 5–6.) But the specific acts that Plaintiff contends are unconstitutional are not at all based on Harrah and Parsons instituting civil forfeiture proceedings against him. (*See* ECF No. 2.) Rather, Plaintiff alleges that Harrah and Parsons unlawfully prepared and proposed a settlement agreement and served discovery requests in the litigation Plaintiff filed in Fayette County Circuit Court, advised the police about "how to permanently Deprive [Plaintiff] of [his] money," and "took [Plaintiff's] money and put it in [Harrah's] reelection [sic] campaign." (*Id.* at 3–4, 6–7, 8.) Harrah and Parsons are entitled to absolute prosecutorial immunity only as to the first of these functions.[5]

As to Plaintiff's claims involving the settlement agreement and the discovery requests, absolute prosecutorial immunity is appropriate because Harrah and Parsons acted "in service of [their] role as an advocate on behalf of the state." *Conley v. Ryan*, 92 F. Supp. 3d 502, 521–22 (S.D.W. Va. 2015). Under West Virginia law, "[w]hen a party against whom no criminal charges have been brought seeks the return of seized property, such person should file, in the circuit court of the county in which the property was seized, a complaint seeking the return of such property under West Virginia Rule of Criminal Procedure 41(e)." Syl. Pt. 1, *Pristine Pre-Owned Auto, Inc. v. Courrier*, 783 S.E.2d 585 (W. Va. 2016). Although such a proceeding is civil, not criminal, *see id.*, the documents

---

5 Harrah and Parsons may be entitled to qualified immunity with respect to the other two claims. *See Nero*, 890 F.3d at 118 ("All other actions are entitled only to qualified immunity."); *Conley v. Ryan*, 92 F. Supp. 3d 502, 522 (S.D.W. Va. 2015) ("[W]hen engaged in 'actions extraneous to the judicial process,' prosecutors are shielded only by qualified immunity." (quoting *Ehrlich v. Giuliani*, 910 F.2d 1220, 1223 n.3 (4th Cir. 1990))). However, they have not argued as much (*see* ECF No. 16), and the undersigned thus declines to address whether it applies at this time.

attached to Plaintiff's complaint make clear that Harrah and Parsons acted as representatives of the state due to their status as county prosecutors.   (*See* ECF Nos. 2-6, 2-7.)   And they served the discovery requests and proposed the settlement agreement in that capacity.   (*See* ECF No. 2-5 at 2; ECF No. 2-8 at 1.)   Accordingly, the undersigned **FINDS** that Harrah and Parsons are entitled to absolute prosecutorial immunity with respect to Plaintiff's claims related to the discovery requests and the settlement agreement.

However, Plaintiff's allegation that Harrah and Parsons "advis[ed] police[] how to permanently Deprive [Plaintiff] of [his] money" (ECF No. 2 at 4) is akin to "giv[ing] legal advice to police during an investigation" and is not protected by absolute prosecutorial immunity.   *Nero*, 890 F.3d at 118 (citing *Burns v. Reed*, 500 U.S. 478, 493 (1991)).   And Harrah and Parsons certainly were not "act[ing] as an advocate" when deciding how to use the money the police allegedly seized from Plaintiff.   *Id.*   Therefore, the undersigned **FINDS** that they are not entitled to absolute prosecutorial immunity as to Plaintiff's claims related to either of those functions.   As such, the undersigned proposes that the presiding District Judge **GRANT IN PART** and **DENY IN PART** their motion to dismiss the claims against them on that basis (ECF No. 15).

E. *Callison's Motion to Dismiss (ECF No. 17)*

Callison argues that he is entitled to qualified immunity with respect to Plaintiff's claims against him.   (ECF No. 18 at 5–9.)   "Qualified immunity protects officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'"   *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537–38 (4th Cir. 2017) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)).   To determine whether an official is entitled to qualified immunity, this

Court first "identif[ies] the specific right that the plaintiff asserts was infringed by the challenged conduct." *Id.* at 538 (quoting *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997) (en banc)).   Then, this Court considers, "in either order," "whether a constitutional violation occurred and whether the right violated was clearly established at the time of the official's conduct." *Id.* (internal quotation marks omitted).   If this Court's conclusion is dispositive with respect to one prong, it "need not reach" the other prong. *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)).

Callison contends that the allegations in the complaint—specifically, that Callison "obtained a search warrant without sufficient evidence," unlawfully executed the warrant, and seized $650 during the search but did not give Plaintiff a property receipt—do not amount to a violation of Plaintiff's constitutional rights.   (ECF No. 18 at 6–9.)   Turning first to Callison's application for the search warrant, Plaintiff alleges that Callison "issue[d] a [sic] affidavit for a Search Warrant upon [Plaintiff's] Dwelling" that "used bogus information" and failed to demonstrate probable cause.   (ECF No. 2 at 2, 6.)   "A warrant is constitutionally sound when issued by a neutral magistrate and supported by probable cause." *United States v. Montieth*, 662 F.3d 660, 664 (4th Cir. 2011) (citing U.S. Const., amend. IV; *Illinois v. McArthur*, 531 U.S. 326, 330 (2001)).   "[P]robable cause plainly 'exist[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found.'" *United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).   But where the probable-cause finding is based on intentionally or recklessly false statements made by the affiant, the warrant is invalid.

*United States v. Moody*, 931 F.3d 366, 370–71 (4th Cir. 2019); *Evans v. Chalmers*, 703 F.3d 636, 650 (4th Cir. 2012).

Accepting Plaintiff's allegations as true—which, again, this Court must do when ruling on a motion to dismiss, *McCaffrey*, 921 F.3d at 163–64 ("In considering a motion to dismiss under Rule 12(b)(6), a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." (internal quotation marks omitted))—Callison's affidavit was based entirely on "bogus information . . . that had nothing to do with [Plaintiff] in [his] personal capacity, nor stated anything [Plaintiff did] as a crime." (ECF No. 2 at 6.)   An officer's use of false information to support the probable-cause determination for a search warrant constitutes a Fourth Amendment violation that was clearly established prior to February 15, 2017.   *See Evans*, 703 F.3d at 650; *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) (stating that right is "clearly established" when "existing precedent . . . place[s] the . . . constitutional question beyond debate" (internal quotation marks omitted)).   Therefore, the undersigned **FINDS** that Callison is not entitled to qualified immunity at this stage in the litigation for his alleged use of false information in the warrant affidavit.   *See Booker*, 855 F.3d at 538 (laying out steps in qualified immunity inquiry).

Next, with respect to Callison's execution of the search warrant, Plaintiff alleges that Callison "came to kill [him]" and that the police failed to identify themselves "before breaking [Plaintiff's] window, and then paus[ed] for a few moments" before identifying themselves "as they came into [his] Dwelling" because they "wanted [Plaintiff] to think[] someone was breaking into [his] dwelling" and "hoped [he] had something in [his] hands, so they could kill [him]." (ECF No. 2 at 2.)   The Fourth Amendment's "knock and announce requirement . . . generally requires police officers entering a dwelling to knock

on the door and announce their identity and purpose before attempting forcible entry." *United States v. Dunnock*, 295 F.3d 431, 434 (4th Cir. 2002) (citing *United States v. Grogins*, 163 F.3d 795, 797 (4th Cir. 1998)). But the police are excused from this requirement if "exigent circumstances" exist—that is, they "must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Bellotte v. Edwards*, 629 F.3d 415, 420 (4th Cir. 2011) (quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)).

The allegations in the complaint indicate that Callison ran afoul of the knock-and-announce requirement by breaking the window before making Plaintiff aware of his presence. *See Dunnock*, 295 F.3d at 435 (citing 18 U.S.C. § 3109). And nothing in the complaint suggests that exigent circumstances justified a "no-knock" entry, *i.e.*, that there was "a particularized basis to reasonably suspect that knocking and announcing would be met with violent resistance." *United States v. Singleton*, 441 F.3d 290, 293 (4th Cir. 2006) (quoting *Grogins*, 163 F.3d at 798); *see Bellotte*, 629 F.3d at 420 (stating that this Court must "determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement" (quoting *Richards*, 520 U.S. at 394)). "[G]eneralizations about the inherent violence of [alleged] drug dealers, such as their tendency to own weapons and to protect their property by force," are "insufficient to justify a no-knock search." *Singleton*, 441 F.3d at 293–94. "The knock-and-announce requirement has long been a fixture in law," and its bounds were clearly established by February 15, 2017. *Bellotte*, 629 F.3d at 419 (citing *Gould v. Davis*, 165 F.3d 265, 270 (4th Cir. 1998)). Accordingly, the undersigned **FINDS** that at this stage

18

in the litigation, Callison is not entitled to qualified immunity with respect to his alleged failure to knock-and-announce prior to breaking Plaintiff's window and entering his home.

Finally, Plaintiff alleges that during the search, the police seized $650 from him "but never [gave him] a Property Receipt." (ECF No. 2 at 2, 11.) To the extent Callison's failure to provide a property receipt to Plaintiff during the execution of the search warrant constitutes a constitutional violation, Plaintiff's right to receive a property receipt was not clearly established on February 15, 2017. "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Booker*, 855 F.3d at 538 (internal quotation marks omitted). In short, there must be "a case where an officer acting under similar circumstances . . . was held to have violated the [relevant constitutional amendment]." *White*, 137 S. Ct. 552; *Safar v. Tingle*, 859 F.3d 241, 247 (4th Cir. 2017).

The undersigned has been unable to find any case law from the United States Supreme Court, the Fourth Circuit Court of Appeals, or the West Virginia Supreme Court of Appeals stating that an officer's failure to provide a property receipt during a seizure is a constitutional violation. *See Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) ("To determine if the right in question was clearly established, we first look to cases from the Supreme Court, this Court of Appeals, or the highest court of the state in which the action arose." (citing *Owens* ex rel. *Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004))). Even though Callison's alleged conduct may have violated West Virginia Rule of Criminal Procedure 41(d), a violation of state law does not itself rise to a federal constitutional violation. *See Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014) ("Conduct violating state law without violating federal law will not give rise to a

§ 1983 claim." (citing *United States v. Van Metre*, 150 F.3d 339, 347 (4th Cir. 1998))). Therefore, the undersigned **FINDS** that Callison is entitled to qualified immunity with respect to his alleged failure to provide a property receipt.

Because Callison is entitled to qualified immunity at this stage with respect to only some of Plaintiff's claims against him, the undersigned proposes that the presiding District Judge **GRANT IN PART** and **DENY IN PART** Callison's motion to dismiss (ECF No. 17).

### F. *Young's Motion to Dismiss (ECF No. 19)*

Young argues, among other reasons for dismissal,[6] that Plaintiff's claims against him are barred by res judicata or collateral estoppel. (ECF No. 20 at 11–12.) Res judicata, otherwise known as claim preclusion, prohibits a party from bringing a claim in a subsequent action when there was a final judgment on the merits in a previous action between the same parties involving the same claim or a related one. *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 803 S.E.2d 519, 530 (W. Va. 2017) (quoting Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41 (1997)); *see* In re *Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000) (stating that federal courts must apply preclusion law of state where prior judgment entered). A claim is the same or similar if "the same evidence would support both actions or issues." *Dan Ryan Builders*, 803 S.E.2d at 530 (quoting Syl. Pt. 4, *Slider v. State Farm Mut. Auto. Ins. Co.*, 557 S.E.2d 883 (W. Va. 2001)).

---

6 One of Young's asserted reasons for dismissal is that this action was not served within the ninety-day period provided for service in Federal Rule of Civil Procedure 4(m). But where, as here, the plaintiff proceeds *in forma pauperis*, the ninety-day period begins to run when this Court enters an order authorizing service of process by the U.S. Marshals Service. *Robinson v. Clipse*, 602 F.3d 605, 608–09 (4th Cir. 2010). In this case, that order was entered on May 1, 2019. (ECF No. 5.) Young was served on May 22, 2019, well within the ninety-day period for service in Rule 4(m). (ECF No. 9.)

Plaintiff's claims against Young in this action all stem from the April 18, 2016 search warrant and its execution.   (*See* ECF No. 2 at 1–2, 6.)   Specifically, Plaintiff alleges that Young "used bogus information to obtain a Search Warrant[]" and seized $4,400 from Plaintiff's home while executing the search warrant, but the property receipt Young gave Plaintiff "stated $2,200 cash and some weed nothing else."   (*Id*. at 1, 6.)   But Plaintiff further alleges that he filed a petition in the Circuit Court of Fayette County, West Virginia, on July 24, 2017, seeking the return of the money seized on April 18, 2016.   (*Id*. at 3; *see* ECF No. 2-8 at 1.)

It does not appear that Plaintiff challenged the constitutionality of the seizure or the total amount of the funds seized during the state-court proceeding.   (*See* ECF No. 2-8 at 1.)   However, he likely could have done so.   In West Virginia, "[w]hen a party against whom no criminal charges have been brought"—such as Plaintiff—"seeks the return of seized property, [he] should file, in the circuit court of the county in which the property was seized, a complaint seeking the return of such property under West Virginia Rule of Criminal Procedure 41(e)."   Syl. Pt. 1, *Pristine Pre-Owned Auto*, 783 S.E.2d 585. The Supreme Court of Appeals was guided by federal courts' interpretations of Federal Rule of Criminal Procedure 41(g),[7] which corresponds with West Virginia Rule of Criminal Procedure 41(e), in developing this procedure.   *Id*. at 591–92.   And when a plaintiff seeks the return of seized property through a civil action in federal court—as opposed to a Rule 41(g) motion in a federal criminal proceeding—he may bring related claims "challenging the forfeiture . . . on due process grounds."   *See United States v.*

---

7 The current text of Federal Rule of Criminal Procedure 41(g) was previously found at Federal Rule of Criminal Procedure 41(e).   *See Chairez v. United States*, 355 F.3d 1099, 1100 (7th Cir. 2004).

*Stevens*, 500 F.3d 625, 628 n.3 (7th Cir. 2007); *United States v. Arreola-Ramos*, 60 F.3d 188, 191 & n.13 (5th Cir. 1995).

Although the Supreme Court of Appeals of West Virginia has yet to determine whether such related claims are permissible when a Rule 41(e) complaint is filed, it is reasonable to conclude that the court would interpret this aspect of West Virginia Rule 41(e) like federal courts have interpreted federal Rule 41(g).   *See Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir. 1999) (explaining that when state law is unclear, federal court must "interpret the law . . . as it appears that the [state's highest court] would rule"). Therefore, Plaintiff could have brought his constitutional challenges to the warrant and its execution in the Rule 41(e) proceeding he filed in state court.   The undersigned **FINDS** that because he did not, claim preclusion bars the claims he makes against Young in this action.   *See Dan Ryan Builders*, 803 S.E.2d at 530.   Accordingly, the undersigned proposes that the presiding District Judge **GRANT** Young's motion to dismiss Plaintiff's claims against him (ECF No. 19).

### G. Remaining Defendants

Finally, the undersigned **FINDS** that Plaintiff's complaint fails to state a claim against the remaining defendants in this action.   The complaint is devoid of any allegations about the actions of Defendants Central West Virginia Drug Task Force Corporation; Oak Hill City Police Department; Fayetteville City Police Department; City of Oak Hill, West Virginia; City of Fayetteville, West Virginia; Mount Hope City Police Department; City of Mount Hope; Ansted City Police Department; City of Ansted; Gauley Bridge City Police Department; City of Gauley Bridge; Nicholas County Commission; Nicholas County Sheriff Department; Summersville City Police Department; City of Summersville, West Virginia; Richwood City Police Department; City of Richwood; Clay

County Commission; Clay County Sheriff Department; Webster County Commission; Webster County Sheriff Department; City of Webster Spring, West Virginia; Webster Spring City Police Department; City of Cowen, West Virginia; Pocahontas County Commission; Pocahontas County Sheriff Department; Marlinton City Police Department; and City of Marlinton, West Virginia.   (*See* ECF No. 2.)   There are certainly no allegations to suggest "that the execution of a policy or custom of [any of these defendants] caused the violation," as is necessary for § 1983 liability against them.   *Penley*, 876 F.3d at 653 (quoting *Love-Lane*, 355 F.3d at 782).   Accordingly, the undersigned proposes that the presiding District Judge **DISMISS** Plaintiff's complaint (ECF No. 2) as to these defendants for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Further, the undersigned **FINDS** that Plaintiff's claims against Kessler's estate do not survive Kessler's death.   "Federal courts look to state law in determining whether § 1983 claims survive the death of a defendant, provided that state law is not inconsistent with federal law."   *Susko v. City of Weirton*, No. 5:09-cv-1, 2011 WL 221825, at *4 (N.D.W. Va. Jan. 20, 2011) (citing *Robertson v. Wegmann*, 436 U.S. 584, 589 (1978)). In West Virginia, a cause of action "may be revived against the personal representative of the wrongdoer and prosecuted to judgment and execution" only if it is brought prior to the wrongdoer's death.   W. Va. Code § 55-7-8a(d).   Plaintiff did not bring this action until after Kessler's death, as is illustrated by the relief Plaintiff seeks from Kessler's estate.   (ECF No. 2 at 12.)   Accordingly, the undersigned proposes that the presiding District Judge **DISMISS** Plaintiff's complaint (ECF No. 2) as to Kessler's estate for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.    RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Fayette County's and Fridley's motion to dismiss (ECF No. 13), **GRANT IN PART** and **DENY IN PART** Harrah's and Parsons's motion to dismiss (ECF No. 15), **GRANT IN PART** and **DENY IN PART** Callison's motion to dismiss (ECF No. 17), and **GRANT** Young's motion to dismiss (ECF No. 19).   It is further **RECOMMENDED** that the presiding District Judge **DISMISS** Plaintiff's complaint (ECF No. 2) as to Defendants Central West Virginia Drug Task Force Corporation; Oak Hill City Police Department; Fayetteville City Police Department; City of Oak Hill, West Virginia; City of Fayetteville, West Virginia; Mount Hope City Police Department; City of Mount Hope; Ansted City Police Department; City of Ansted; Gauley Bridge City Police Department; City of Gauley Bridge; Nicholas County Commission; Nicholas County Sheriff Department; Summersville City Police Department; City of Summersville, West Virginia; Richwood City Police Department; City of Richwood; Clay County Commission; Clay County Sheriff Department; Webster County Commission; Webster County Sheriff Department; City of Webster Spring, West Virginia; Webster Spring City Police Department; City of Cowen, West Virginia; Pocahontas County Commission; Pocahontas County Sheriff Department; Marlinton City Police Department; City of Marlinton, West Virginia; and Kessler's estate.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge.    Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days (filing of objections) and three (3) days (mailing) from the date of the filing of

this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.   Extension of this time period may be granted by the presiding District Judge for good cause shown. Copies of any objections shall be provided to any opposing parties or, if they are represented by counsel, to their counsel, and to Judge Copenhaver.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.   28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

ENTER:      November 15, 2019

Dwane L. Tinsley
United States Magistrate Judge